Argued and submitted January 20, reversed and remanded
for further consideration September 15, 1982,
petition for attorney fee award denied August 10, 1983
(64 Or App 271, 668 P2d 423)

DONNELL,
*Petitioner,*

*v.*

EASTERN OREGON STATE COLLEGE,
*Respondent.*

(No. 512, CA A21024)

650 P2d 1012

F. E. Glenn, Boardman, argued the cause and filed the brief for petitioner.

Christine L. Dickey, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

Before Gillette, Presiding Judge, Joseph, Chief Judge, and Young, Judge.

GILLETTE, P. J.

## GILLETTE, P. J.

Petitioner Donnell was employed as Physical Plant Superintendent 2 (superintendent) at Eastern Oregon State College (EOSC). That position was abolished in 1976. Donnell took a demotion, in lieu of lay-off, to the lower paying, classified position of Plant Operations Foreman (foreman). The duties of the abolished superintendent position were reassigned among the unclassified position of Assistant Business Manager and the classified positions of Plant Operations Foreman, Security Supervisor 1, Custodial Work Supervisor 2, and Landscape Maintenance Foreman. Petitioner has been challenging the abolition of his position and the reassignment of its duties ever since. In an earlier opinion, *Donnell v. Briggs,* 37 Or App 823, 588 P2d 650 (1978), we held that the Employment Relations Board (ERB) did not err in approving the reassignment of a portion of the superintendent's duties to the unclassified Business Manager position. That issue is settled. However, we remanded the case for findings on the question of whether other of the superintendent's duties were properly reassigned to the various classified positions including the one petitioner now holds. On remand, ERB held that these remaining reassignments were appropriate.

The current appeal challenges whether ERB's findings of fact, which admittedly are supported by the record, support its conclusions of law. We find that they do not do so in certain respects, and therefore reverse and remand.

The State Personnel Division has adopted Personnel Division Rule 61-100, which provides:

"An appointing authority may lay off an employee because of abolition of position, shortage of funds or work, a material change in duties or changes in an organizational unit. Duties performed by laid-off employees may be reassigned to other employees already working *who hold positions in appropriate classes.*" (Emphasis supplied.)

Petitioner's contentions required ERB to consider the question of whether the classified positions to which the superintendent's duties were reassigned are "appropriate" for those duties. We, in turn, are asked to review ERB's assessment of that question. We consider first the scope of our review.

## SCOPE OF REVIEW

■ As a preliminary matter, petitioner argues that the meaning of the term "appropriate" is a question of law for this court to determine. He relies on *Springfield Education Assn. v. School Dist.,* 290 Or 217, 621 P2d 547 (1980), which dealt with the "[a]lllocation between agencies and courts of responsibility for giving specific meaning to *statutory* terms." 290 Or at 221. (Emphasis supplied.) Specifically, that case focused on the "responsibility for the agency in its initial application of the statute and for the court on review of that application." 290 Or at 223. The court summarized three types of statutory terms: terms of precise meaning; inexact terms; and terms of delegation. Petitioner claims that the term "appropriate" was an "inexact term," whose meaning was held in *Springfield* to be a question of law for the courts. 290 Or at 224.

*Springfield* is not directly applicable, because this is not a case of an agency's initial application of a statute. In fact, ERB is not applying a statute at all, but an agency *rule.* Nevertheless, we think the *Springfield rationale* is applicable because, in this situation, the rule ERB is applying is directly analogous to a statute—it is a properly promulgated, valid rule of law that it is bound to apply in a contested case hearing to a given set of facts.

■ ■ "Inexact terms" are terms that, although their application to a given set of facts may not be immediately apparent, are nonetheless an expression of a completed legislative judgment. "Whether certain facts are within the intended meaning depends upon the policy that inheres in the term by its use in a statute [or rule] which is intended to accomplish certain legislative purposes. * * *" *Springfield Education Assn. v. School Dist., supra,* 290 at 225. As the Supreme Court has explained,

"A statute is interpreted in deed by orders or agencies which apply statutes to particular facts. The requirement of ORS 183.470 [of the Oregon Administrative Procedures Act] that the order contain findings of fact and conclusions of law is a requirement that the reasoning by which the agency applies a statute to facts to reach a result be expressed in the order. * * * If the statute requires interpretation, * * * the interpretation and the agency's rationalization of it are properly a part of the reasoning of

the order. Thus, * * * the order itself is the instrument by which an agency demonstrates that a particular interpretation or application of a statute is within a generally expressed legislative policy.

"* * * * *

"The dispositive question of law on review * * * is whether the agency action is within the legislative policy which inheres in the statutory term. * * *" *Springfield Education Assn. v. School Dist.,* 290 Or at 227.

We perceive our role, under the guidance of *Springfield* and in light of petitioner's particular claims of error, to consist of reviewing challenged portions of ERB's order to determine whether it has correctly identified the policies inhering to the term "appropriate," in light of the facts of this case. *See also McCann v. OLCC,* 27 Or App 487, 556 P2d 973 (1976), *rev den* (1977). We turn to a consideration of petitioner's specific points.

## PLANT OPERATIONS FOREMAN

As noted, petitioner was demoted to the position of plant operations foreman. He contends that several of his duties in that new classification are "inappropriate." Petitioner first points out that the class specification for plant operations foreman anticipates responsibility for a plant with an operating budget of $30,000 to $100,000, whereas the plant at EOSC has a $130,000 budget. He argues that such higher responsibility is not appropriate for that position.

ERB responded to this argument with the interesting point that the $100,000 figure was arrived at in 1963 and "the difference in dollar amounts is more than made up by the inflation rate from 1963 to the present." EOSC adds that the figures quoted in the specifications are only general guidelines. It also argues that comparisons between the supervisor and foreman positions based solely upon *size* of the institution are deceptive, because there is a major *qualitative* difference between the two positions. As superintendent, petitioner had overall supervisory authority over maintenance, building repairs, heating operations, grounds and custodial operations. As foreman, he no longer has overall supervisory authority over any of the plant services and has day-to-day supervisory responsibility only for

maintenance, building repairs and the heating plant operation. This point is persuasive. The $30,000 difference in amount between the foreman's actual budgetary responsibility and the figure listed in the guidelines is minimal and does not support the conclusion that the foreman's budgetary duties are inappropriate.

Petitioner argues next that it is not appropriate to entrust the foreman with responsiblity for preparing a maintenance budget, as he is required to do. ERB pointed out, however, that the class specifications provide that the foreman "confers with supervisor on budget requests * * *." Insofar as the budget that the foreman prepares is *preliminary* and is subject to final approval by the Business Manager, the duty arguably constitutes "conferring" with a supervisor on budget requests.

As foreman, petitioner was also assigned the duties of design, preparation of plans, specifications, and cost estimates for building repair and alteration projects costing up to $50,000, review and revision of plans for projects over $50,000 and supervision and preparation of topographic plot plans and as-built drawings for utility master plans. The class specifications for foreman, under the caption "Examples of Work," require him to "[p]repare *rough* plans and specifications for minor building alterations" and to supervise their execution. (Emphasis supplied.) Petitioner argues that *rough* plans are not sufficient for carrying out the reassigned duties. As foreman, petitioner prepares finished plans and argues that they are necessary.

In its findings of fact, ERB recognized that petitioner prepares *finished* plans and that it was "the norm" for contractors performing the types of jobs that petitioner is responsible for (under $50,000) to use such finished plans as the basis for their bids and their subsequent construction work. Yet ERB concluded that "[t]he fact that the petitioner actually did more is a compliment to his individual workmanship but does not mean the duties were improperly assigned." That observation may be correct, but is does not answer the question. The fact remains that, if the foreman could not carry out the reassigned duty within the parameters of the job specification, the reassignment was not appropriate.

■     ERB's reasoning here is hard to follow. It points out in its legal conclusions that, in *major* construction projects, outside consultants prepare their own drawings. That fact seems irrelevant to the inquiry here, for the foreman was only reassigned responsibility for *minor* projects. ERB then states that "in most instances the Plant Operations Foreman was only required to prepare rough plans and specifications." If that is true, the assignment probably was appropriate. The problem lies in the fact that there is no basis for this conclusion in ERB's findings of fact. Without such findings, mere conclusory language is insufficient to overcome petitioner's claim of error.

■     The foreman was also reassigned the duties of acting as a technical resource person to retained consultants and a technical advisor on energy conservation matters. This involved developing, identifying and updating data for a quarterly energy report and for a number of energy consultation projects and preparation of schematic designs and calculations showing projected energy savings for specific projects. Petitioner argues that "to do the kind of energy conservation required at EOSC, anything less than an engineer (Physical Plant Superintendent 2) would be wasteful." ERB pointed out that the class specification states that the foreman "supervises the maintenance, repair and operation of buildings, equipment and grounds for a small institution * * *." It concludes that "[b]oth of these duties fall within the meaning of the above language." We agree that the language contained in the specification is general enough to include virtually anything related to the maintenance and operation of the buildings at EOSC. There is no error.

■     The foreman was also assigned the duty of assuring compliance with applicable fire and building codes. ERB found that this duty requires a "thorough knowledge" of those codes. The class specifications for the foreman position, however, prescribe only a "working knowledge" of the codes and regulations. Petitioner argues again that the duty requires more than the specifications contemplate.

ERB acknowledges that there is "some merit in this contention," yet it concluded:

"* * * [W]here the gist of the duties performed are properly within the allocated class, the class specifications

should be construed broadly. Applying this construction there is little, if any, distinction between a 'working knowledge' and a 'thorough knowledge' of the existing codes."

We accept ERB's explanation on this point. The difference between "working" and "thorough," in this context, is more apparent than real.

## SECURITY SUPERVISOR I

■      By the reorganization, the Security Supervisor I was given some responsibility for safety. The evidence established that that consisted of making necessary portions of the plant and grounds available to OSHA inspectors and state fire marshalls and generally reporting any unsafe conditions. Petitioner's original superintendent position required "* * * considerable knowledge of occupational hazards and safety precautions * * *." Petitioner's entire argument on this point is as follows:

"This writer can find nothing in the class specifications of Security Supervisor I that would suggest a person abundantly qualified as such would know what the letters OSHA   ·  even stand for. 'Security' and 'safety' are as different as 'working' and 'thorough.' "

ERB found the transfer of duties appropriate, pointing out that the safety duties transferred to the security supervisor were minimal. Also, it relied on the testimony of the college's Personnel Analyst to the effect that it is typical and appropriate to transfer relatively minor safety duties to a security officer. On the basis of that evidence, ERB's conclusion was correct.

## CUSTODIAL SUPERVISOR 2

■      The custodial supervisor was assigned the duty of preparing a preliminary budget for custodial services for submission to the Director of Business Affairs. The class specification for that position does not mention budgetary responsibility. The job description provides that the custodial supervisor "supervises a large number of subordinate custodial workers in building service activities" and "maintains and inventories supplies and materials; estimates supply needs in advance, requisitions new supplies and inventory" and "does related work as required." Submission of a *preliminary* budget for that department seems

consistent with the specified duties. The custodial supervisor was also reassigned the duties of requisitioning materials and preparing procurement specifications for such requistions. Those duties fall squarely within the job description.

## LANDSCAPE MAINTENANCE FOREMAN

■ The class specifications for this position envision planning, management and participation in grounds maintenance. Again, no mention is made of budgetary responsibilities. Under the reassignment, the position was given the duties of preparing a preliminary budget for the grounds section, preparing procurement specifications for landscape equipment and assuming complete responsibility for designing and engineering campus landscaping. ERB found that "the class specifications for Landscape Maintenance Foreman do not include the authority to prepare procurement specifications or to perform design and engineering work." In its conclusions of law, however, ERB ruled that those same duties *were* within the class specifications for Landscape Maintenance Foreman. It quoted the specifications that state that the foreman, "* * * *plans, manages,* and participates in gardening and grounds maintenance * * *" working "* * * quite *independently* * * *" with "* * * *full responsibility* for horticultural practices * * *." (Emphasis in original.)

As petitioner argues, ERB's conclusions of law do not follow from its findings of fact concerning this position. On appeal, both parties mention that, in 1973, the college requested that the foreman position be upgraded to Landscape Superintendent, which does include the duties at issue, and that that request was denied. Petitioner claims that an identical upgrade request was granted in 1977, following the reorganization. If this is correct, any problem with the appropriateness of the landscape foreman performing the procurement specifications duties would have been cured. Those facts are not in ERB's findings, however. Because they are not, ERB's conclusion does not follow from the facts found. That is error requiring remand. *See Donnell v. Briggs, supra; McCann v. OLCC, supra; Home Plate, Inc. v. OLCC,* 20 Or App 188, 530 P2d 862 (1975).

## CONCLUSION

■ The reassignment of the superintendent's duties following reorganization was generally to appropriate classes. However, there is no basis for ERB's conclusion that the foreman can carry out his new responsibilities of preparing plans and specifications for minor construction projects through preparation of rough, as opposed to finished, drawings. Similarly, the budgetary and procurement specification preparation duties reassigned to the Landscape Maintenance Foreman are, by ERB's own findings, beyond the class specifications.[1]

Having determined that the Board erred in its conclusions as to two aspects of the assignment of petitioner's duties, the question remains: What is to be done about it? Petitioner, for his part, urges that the abolition of his superintendent position must be reversed. We do not consider the answer to that question to be one that this court should provide in the first instance. ERB, with its expertise in this field, should have the first opportunity to assess this question in light of this opinion. The matter is remanded accordingly.

Reversed and remanded for further consideration in light of this opinion.

---

[1] Petitioner's stake in having this latter inappropriate reassignment corrected is somewhat abstract, inasmuch as the duties in question are probably not going to be reassigned to him in any event. We have not attempted to deal with the question of petitioner's standing to raise questions concerning the duties of the Landscape Maintenance Foreman, however, because of petitioner's clear standing to raise questions concerning his own duties and the interrelated nature of all the reassignments discussed in this opinion.